[Civ. No. 21604. Third Dist. Nov. 1, 1982.]

SACRAMENTO SAVINGS AND LOAN ASSOCIATION, Petitioner, v. THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent; WILLIAM H. MacLAUGHLIN, JR., et al., Real Parties in Interest.

COUNSEL

Hefner, Stark & Marois, Archie Hefner and Judy R. Campos for Petitioner.

No appearance for Respondent.

Fred Crane and Alan L. Green for Real Parties in Interest.

OPINION

**REGAN, Acting P. J.**—We granted an alternative writ of mandate in the present case to reconsider a line of California authority upholding prepayment fees on secured real property loans against the challenge such penalties are unreasonable restraints on alienation in light of the California Supreme Court's decision in *Wellenkamp* v. *Bank of America* (1978) 21 Cal.3d 943 [148 Cal.Rptr. 379, 582 P.2d 970]. We conclude the rationale expressed in the *Wellenkamp* decision has not undermined the reasoning supporting prior cases upholding such prepayment fees. Accordingly, we decline to depart from existing authority and shall issue a peremptory writ.

Real parties in interest (the borrowers) were real estate developers who executed promissory notes secured by deeds of trust in favor of petitioner Sacramento Savings and Loan (the lender). Each note contained a provision for a prepayment penalty as a condition for issuing a deed of reconveyance and full release of the deed of trust prior to the expiration of the note. When the borrowers sought to refinance these notes, lenders demanded payment of the penalties prior to reconveyance and release. Although the borrowers protested the penalties, they paid them and the deeds of reconveyance and releases were received and recorded.

The borrower's second amended complaint against the lenders advanced three causes of action. They sought declaratory relief holding the prepayment penalty provisions not automatically enforceable, damages for unjust enrichment, and attorney's fees. The lender demurred to the complaint and the trial court sustained the demurrer as to the first and third causes of action (declaratory relief and attorney's fees) without leave to amend, but overruled the demurrer to the second cause of action (money damages). The instant petition followed.

The lender seeks mandate to compel the trial court to sustain its demurrer to the cause of action for money damages. It relies on a series of cases upholding prepayment penalty clauses against challenges that they were void as penalty clauses (*Williams* v. *Fassler* (1980) 110 Cal.App.3d 7 [167 Cal.Rptr. 545]; *Meyers* v. *Home Sav. & Loan Assn.* (1974) 38 Cal.App.3d 544 [113 Cal.Rptr. 358]) and unreasonable restraints on alienation. (*Lazzareschi Inv. Co.* v. *San Francisco Fed. Sav. & Loan Assn.* (1971) 22 Cal.App.3d 303 [99 Cal.Rptr. 417]; *Hellbaum* v. *Lytton Sav. & Loan Assn.* (1969) 274 Cal.App.2d 456 [79 Cal.Rptr. 9], disapproved on other grounds in *Wellenkamp, supra,* 21 Cal.3d 943.) Apparently the trial court concluded that these cases were no longer controlling in light of *Wellenkamp.* The borrowers advance the same contention here; we are unpersuaded.

In *Wellenkamp* the court held that an institutional lender may not automatically enforce a due-on-sale clause in a promissory note unless the lender can demonstrate enforcement is necessary to protect against impairment to its security or the risk of default. (21 Cal.3d at p. 953.) In reaching this conclusion the *Wellenkamp* court extrapolates a rule from cases such as *Coast Bank* v. *Minderhout* (1964) 61 Cal.2d 311 [38 Cal.Rptr. 505, 392 P.2d 265]; *La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864 [97 Cal.Rptr. 849, 489 P.2d 1113]; and *Tucker* v. *Lassen Sav. & Loan Assn.* (1974) 12 Cal.3d 629 [116 Cal.Rptr. 633, 526 P.2d 1169]. The *Wellenkamp* court "recognized that a direct relationship exists between the *justification* for enforcement of a particular restraint on the one hand, and the *quantum of restraint,* the actual practical effect upon alienation which would result from enforcement, on the

other." (Original italics; *Wellenkamp,* 21 Cal.3d at pp. 948-949.) This relationship led to a balancing test to determine whether a restraint on alienation is unreasonable and therefore prohibited, weighing the quantum of the restraint against the justification for imposing it. The court further found the practical restraint on alienation almost total and the lender's justification relatively small. (*Id.,* at pp. 951-953.)

The borrowers in the present case urge this same balancing test applies in determining whether the prepayment penalty clause at issue is an unreasonable restraint on alienation. They contend the shift in market factors which has occurred since cases such as *Hellbaum* and *Lazzareschi* is similar to the change of circumstances which led the *Wellenkamp* court to overrule its decision in *Coast Bank* v. *Minderhout, supra,* 61 Cal.2d 311. The borrowers contend the prepayment penalty restrains their ability to alienate the property because it forces them to recoup the penalty by raising the selling price by the amount of the penalty in excess of the property's market value. Unless the penalty is recovered the seller will suffer a loss. The borrowers also urge they are restrained in their ability to refinance the property.

Balanced against these alleged restraints the borrowers argue the lender has no legitimate interest to protect by enforcing the prepayment penalty. They assert the lender's interest in maintaining the profitability of its loan portfolio is not harmed by prepayment because the lenders can relend the repaid funds at a *higher* rate of interest than prevailed when the loans were written. By allowing the lender to update its portfolio and replace older, long-term low interest loans with higher interest loans the lender is *profiting* from prepayment rather than suffering. The borrowers contend these are the same market factors which led the *Wellenkamp* court to hold that the automatic enforcement of due-on-sale clauses constituted unreasonable restraints on alienation. Accordingly, the borrowers argue, the lender in the instant case should not be allowed the double recovery of a prepayment penalty coupled with the profit from money relent at an increased interest rate.

Each of the arguments advanced by the borrowers evaporates upon close examination. In arguing the lender will actually profit from the prepayment, the borrowers evidence a too-simplistic view of the financial industry. The same argument was advanced and rejected in *Lazzareschi, supra,* 22 Cal.App.3d 303. In *Lazzareschi* the loan was at a rate "substantially less than that which defendants could obtain by a new loan of the recovered funds . . . ." (*Id.,* at p. 306.) Despite this the court noted there was "difficulty in deciding upon the advantage, if any, to the lender by early repayment." (*Id.,* at p. 309.) There is the matter of expenses incurred by the lender in the activities which lead to the decision to make a new loan. Moreover, there is the possible loss of time between early payment and the new loan during which time the funds must com-

pete with the other resources of the lender, awaiting settlement upon an acceptable borrower. (*Ibid.*)

Additionally, this perceived "benefit" to the lender operates only when market forces have pushed interest rates up. In a market of declining rates the lender's interest in maintaining the profitability of its portfolio is considerable. The restraint on the borrower's ability to refinance when interest rates decline is entirely reasonable as without it the business of institutional lending would be precarious indeed. At any drop in the interest rate every astute borrower would seek to refinance the loan at the lower rate if no penalty were imposed. Although the lender will most likely reap some benefit from converting an older low-interest loan to one paying higher interest, *Lazzareschi* points out the exact nature of this benefit is difficult to ascertain as it hinges on a variety of unknown factors.

On the other side of the scale, the borrower's alleged restraint only occurs if the buyer seeks to refinance the purchase. *Wellenkamp* and its progeny have seriously damaged this argument. In *Dawn Investment Co.* v. *Superior Court* (1982) 30 Cal.3d 695, 697 [180 Cal.Rptr. 332, 639 P.2d 974], the Supreme Court extended the *Wellenkamp* rule to noninstitutional lenders and to commercial property. As a consequence the borrower's loans here were fully assumable. As the loans were at below-market rates they would tend to *increase* the property's marketability. It is only when the buyer must refinance, and encounters the present, higher rates that any restraint takes place. Should interest rates decline, the buyer will *want* to prepay the old loan; assuming the advantage of the new, lower rate outweighs the prepayment penalty.

An additional factor in determining the quantum of restraint on the borrower is the amount of the prepayment penalty. In this case the fee amounted to six months' interest if more than 20 percent of the original principal amount were prepaid in one year. This amounted to a prepayment fee of $51,000 on loans apparently totaling in excess of $2 million. The formula used to arrive at this figure has been called "typical"[1] and was the same formula found to be reasonable in *Lazzareschi*. The same formula has been established by the Legislature as the amount of prepayment penalty which may be charged for prepayment of a loan on a single-family, owner-occupied dwelling during the initial seven years of the loan. (Bus. & Prof. Code, § 10242.6.) The inference to be drawn from the legislative approval of this prepayment formula is that since the Legislature has determined the formula to be reasonable when applied to a purchaser of a home, it is certainly reasonable when applied to commercial

---

[1]See Note, *Secured Real Estate Loan Prepayment and the Prepayment Penalty* (1963) 51 Cal.L.Rev. 923, 925, footnote 14; see also *Meyers* v. *Home Sav. & Loan Assn., supra,* 38 Cal.App.3d at page 546.

borrowers such as the real parties in interest. (See e.g., *Lazzareschi, supra,* 22 Cal.App.3d at pp. 309-310.)

■ Examining all the factors previously discussed in light of the balancing test established in *Wellenkamp* we find the lender has a justifiable interest in imposing the penalty to cover his costs due to potential lag time and administrative processing prior to making a new loan.

We conclude the restraint on alienation caused by the assessment of the prepayment penalty is reasonably related to protecting the legitimate interests of the lender. The reasoning of the court in *Lazzareschi* has not been affected by subsequent events in the credit markets or by the *Wellenkamp* decision. The prepayment fees imposed in the present case do not constitute an unlawful restraint on alienation.

We reject real parties assertion that mandamus is inappropriate to challenge the court's ruling on the demurrer. (See *Babb* v. *Superior Court* (1971) 3 Cal.3d 841 [92 Cal.Rptr. 179, 479 P.2d 379].)

The alternative writ of mandate issued herein is discharged. Let a peremptory writ of mandate issue directing respondent court to vacate its order overruling petitioner's demurrer to the second cause of action and to enter an order sustaining said demurrer without leave to amend and dismissing the action. The petitioner shall recover its costs.

Evans, J., and Sparks, J., concurred.

A petition for a rehearing was denied November 24, 1982, and the petition of real parties in interest for a hearing by the Supreme Court was denied January 6, 1983. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.